Defendant operates a garage and automobile repair shop in the Town of Boyce, Louisiana. Plaintiff lives in the City of Alexandria, about 20 miles from Boyce. He had, prior to the dealings giving rise to this suit, patronized defendant's repair shop. The work done had uniformly been satisfactory.
In March, 1943, plaintiff owned a 1942 Plymouth Tudor Sedan that needed motor repairs and discussed same with defendant who agreed to make repairs necessary to put the car in satisfactory running condition. There is controversy as to the exact character of the repairs defendant agreed to make. It is certain, however, he did agree to do that which was necessary to put the car in good running condition. It was not running when delivered to the shop on March 9th for such repairs.
On March 13th the repairs were completed and plaintiff was then notified of that fact. The charges made therefor, parts and labor, amounted to $113.61. Plaintiff went to defendant's place of business on March 15th, paid $89.14 on the expense bill and the car was delivered to him. He started to Alexandria in it, driving at the rate of 25 or 30 miles per hour, and when he had gone only 10 miles the motor became very hot. It was stopped but would not again start. Defendant was promptly notified of the situation and towed the car back to his garage. When the motor was gone into, it was revealed that the crankshaft was badly scorched from overheating; one of the rods was frozen to the shaft so securely that it had to be disengaged by the use of an acetylene torch. Defendant again undertook to repair the car. He had the crankshaft "turned" by a competent concern in Alexandria and reinstalled it. New rods, inserts, etc., were also installed. Plaintiff was charged with the amount expended for reconditioning the shaft, price of additional parts, etc., aggregating the sum of $30.12. No charge was made for additional labor.
The record discloses that what is meant by "turning" the crankshaft is that by appropriate machinery the rough places thereon are removed, leaving the surface as smooth as it was when manufactured. The process necessarily reduces the size of the shaft an infinitesimal extent and parts specially designed to meet such change have to be used. It is also shown that "turned" shafts are now in common use and give satisfactory service for about one-half as long as new ones.
Some delay was entailed before the damaged shaft could be repaired. The car was lastly delivered to plaintiff on March 26th. He operated it for a day and it again failed to function. He carried it to a competent motor car repair company in the City of Alexandria on March 28th. Repairs *Page 861 
costing $129.71 were then done to it and thereafter the car gave satisfactory service.
Plaintiff instituted this suit to recover the following amounts, to-wit:
Amounts paid defendant for repairs ...................... $143.72 Alleged damage to the car while in defendant's possession ............................................ 21.20 Loss of use of car for fifteen days, allegedly due to defendant's fault ..................................... 150.00 ------- $314.93
The gravamen of the demand is that the repairs were defective and carelessly done through the negligence, lack of skill and care of defendant's agents and employees, although such work was guaranteed by him; that work of this character when competently done and proper parts used, will last for several years.
Defendant denies the charges of negligence and lack of care attributed to him in connection with the repairs to the automobile. He avers that the real reason the car failed to properly operate and function was because plaintiff, due to his great hurry to have possession of it to operate as a jitney, took it out of the garage before work thereon had been fully completed and by "running it immediately and allowing it to get too hot"; and by operating it without allowing time for it to "limber up", contrary to the instructions of defendant's mechanic.
Plaintiff's demand was rejected and he appealed to this court.
The record, although not unusually voluminous, tenders rather difficult questions of fact. It is quite probable the car, due to plaintiff's anxiety to have it yield revenues to him in the jitney business (then flourishing in and about the City of Alexandria), was taken over by him before all of the usual and customary tests were made to ascertain the efficiency of the repairs and the proper functioning of the new bearings, but when it is considered that the motor "froze", and ceased entirely to function, after being operated only 10 miles at a reasonable rate of speed, the conclusion reasonably but forcefully arises that the repairs were not competently done; something was done or omitted in their confection that made possible the stated result. We believe the trouble was due to insufficient or inadequate oil supply. However, under the law, it is not necessary in a case of this character to specifically determine the cause of the motor's failure. The repairs, if properly made, would have insured oil supply adequate to sustain continued operation of the motor.
The fact that defendant did not charge for the labor incurred in repairing the motor the second time gives basis to the belief that he felt responsibility for the collapse of the motor the first time. We think defendant responsible to plaintiff for the charges for the parts, etc., involved in the second repairing. These amount to $30.12.
The failure of the motor the second time, we conclude, was attributable to the same character of ailments that produced the first collapse.
Plaintiff paid for something he did not get. He desired to have the car put in reasonably good running order and entrusted it to defendant for that purpose; and defendant was obligated under his commitment to plaintiff to do this.
When the motor was dismantled by the repair man in Alexandria it was found that from overheating, some, if not all, of the bearings were burned out and the shaft so badly scorched that it could not be repaired.
The Alexandria concern's repairs covered not only the motor but other portions of the car to which defendant had not given attention. This involved labor and the furnishing of parts not involved in the repairs done by defendant. We are unable from the testimony and the bills in the record, to determine exactly the amount of labor done and cost of parts furnished by the Alexandria concern, that are duplications of that done and furnished by defendant. It is our opinion, however, that defendant owes to plaintiff the cost of new parts furnished by the Alexandria concern to replace parts furnished by defendant that were ruined from the car's operation, and also should be condemned to pay for the price of the labor involved in installing such new parts. To determine these items of liability further testimony is needed.
The record reflects that considerable animosity between these litigants has arisen from the regrettable turn in their business relations. We have not mentioned any of the uglier details that contribute to this unhappy result. No good purpose would be promoted by so doing. The fact remains that plaintiff was charged for services of a character he had a right to expect but did not receive. *Page 862 
We experience regret in having to reverse our learned brother of the lower court on questions of fact, but feel that the ends of justice demand that such be done.
Plaintiff failed to make out his case as to the alleged damage to his car while in defendant's possession, and for the loss of profits from its nonuse for which he sued.
For the reasons herein assigned, the judgment appealed from, in so far as it rejects plaintiff's suit to recover damages to his car alleged to have occurred while in defendant's possession, and for loss of profits because of delay in making satisfactory repairs to the car, is affirmed; and for said reasons, the judgment in other respects is annulled, reversed and set aside. The case is remanded to the lower court for further proceedings in keeping with law and the conclusions and views herein expressed. Defendant is cast for all costs.