130 So.2d 160 (1960)
J. W. DICKINSON et al., Plaintiffs-Appellees,
v.
CITY OF MINDEN, Defendant-Appellant.
No. 9363.
Court of Appeal of Louisiana, Second Circuit.
December 19, 1960.
On Rehearing May 5, 1961.
Rehearing Denied June 1, 1961.
*161 Hobbs & Yeates, Minden, for appellant.
Campbell, Campbell & Marvin, Minden, for appellees.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
Plaintiffs seek to recover of the defendant damages allegedly sustained by them as the result of certain street improvements undertaken by the defendant. From an adverse judgment, the defendant appealed and the plaintiffs have answered the appeal praying that the awards be increased.
Primarily for consideration are questions relating to the alleged fault of the defendant and as to whether plaintiffs have sustained their demands by a preponderance of the evidence.
The material facts, about which there is little or no dispute, may be briefly stated. Plaintiff Frank B. Treat acquired, in 1948, and now owns, a lot of an approximate width of 80 feet and a length of 173 feet extending along the north side of West Street in the City of Minden. Running through this property, from north to south, is Prothro Branch, seven to eight feet wide at the top of its banks, two to three feet wide at the bottom, and several feet deep. A wooden bridge spanned this branch at West Street. Treat constructed a service station on this lot, east of the branch, and later moved on the property an all-metal portable building which he placed adjacent to and on the west side of the station. This building was used as a cafe.
In 1953, Treat rented the aforesaid premises to plaintiff Dickinson. Thereafter, Dickinson erected an 18 × 30-foot frame building adjacent to and adjoining the cafe building on the west. This building spanned the stream by means of a steel foundation and supports anchored in concrete footings in its banks. The west wall of the cafe constituted a common wall with the frame building.
During the latter part of 1957, the City replaced the wooden bridge with a concrete structure. Plaintiffs contend that the new structure was placed some seven or eight feet west of the old bridge and that, as a consequence, the course of the stream was changed. It is further contended that, by the construction of a concrete abutment along the shoulder of the street, where the branch formerly ran, the water, in striking the abutment, formed an eddy, or whirling movement, which, by its force and movement, undermined and inundated the foundations *162 of both the cafe and frame building. As a result of this condition, plaintiffs contend that Treat was forced to remove the cafe to another location and that Dickinson's frame building was rendered unfit for occupancy.
The damages claimed by Treat consist of the cost of the removal of the cafe, loss of rent thereon during the time required for its removal, and for depreciation of the remaining property. Dickinson's claim is for the loss of the value of the frame building and appurtenances as well as the loss of revenue of the frame building and filling station occasioned by the removal of the cafe.
The questions with which we are presently concerned are purely factual in nature. Plaintiffs' case is predicated wholly upon the contention that the foundations of the cafe and frame building were inundated because of the City's replacement of the wooden bridge on West Street with a concrete structure which allegedly altered the course of the stream. Plaintiffs testified most positively that the erosion and inundation occurred during, or subsequent to, the City's construction of said improvement, and that such erosion and inundation were caused, as aforesaid, by the change in course of the water as it left plaintiffs' property. Nevertheless, the record establishes that plaintiff Treat moved the cafe building to a site on the main highway October 14, 1957, and that the installation of the concrete structure, to replace the wooden bridge, began by the pouring of concrete for the bottom of the new structure October 29, 1957, or 15 days after the building had been removed from the site. These facts are made clear by the testimony of plaintiff Dickinson, as to the removal of the building, and by the testimony of defendant's clerk, supported by his records, as to the commencement of the concrete construction. We are impressed, also, that the rains, which allegedly inundated plaintiffs' property, occurred after the later date and probably immediately preceding the taking of photographs filed in evidence during the latter part of December, 1957, and January, 1958. The conclusion is, therefore, inescapable that plaintiff Treat's position, upon which he relies in making claim for damages against the City, is untenable. For the same reason, plaintiff Dickinson's claims, so far as predicated on losses allegedly sustained by reason of the removal of the cafe, are, likewise, untenable. If it be true that plaintiff Treat moved the cafe to a new location because of erosion and inundation of its foundation, as testified by both plaintiffs, it is obvious that the conditions complained about existed prior to the City's undertaking of the street improvement. The conclusion necessarily follows that the replacement of the bridge did not precipitate the removal of the cafe.
Remaining for consideration is plaintiff Treat's claim for depreciation of the property remaining after the removal of the cafe and Dickinson's claim for the loss of the value of the frame building and appurtenances and for the loss of rent therefrom.
Prerequisite to the recovery of damages from another is the establishment of such damages as were occasioned by the other's fault. From the record, it is established that Prothro Branch drains a considerable portion of the north and west areas of the City of Minden; that, during heavy rains, this branch overflows its banks and spreads over the surrounding areas; and that, on occasions, the water came to the bottom of the floor of the building spanning its banks. Plaintiff Treat, in testifying in this connection, stated:
"* * * it never did carry a whole lot of water except after a big flash flood; and if the branch couldn't carry it, the thing would spread out several hundred feet wide. The fact is, the bridge couldn't carry it either; lots of times it would go over the road."
We do not deem it necessary to review the testimony in detail. Sufficient is the observation it clearly appears from *163 the testimony of not only plaintiffs and their witnesses but from the testimony of the defendant's witnesses that erosion had set in before the City's improvement of the street was undertaken. There is no showing in the record what damages, and/or the extent or amount thereof, are due to or resulted from the action of the City in the replacement of the wooden bridge by a concrete structure or a change in the course of the stream. To justify recovery, it is incumbent upon plaintiffs to establish their claims to a legal certainty by a preponderance of evidence. From our review of the record, we do not find that they have borne this burden.
It is true there is considerable jurisprudence to the effect that, where only questions of fact are involved, great weight should be accorded the conclusions and findings of the trial court. This is true because a trial judge is ordinarily, in most instances, in a better position, by virtue of his acquaintance with and observation of the witnesses, as they testify, to judge their credibility and to appraise and evaluate their testimony. It is, however, the constitutional duty of appellate courts to consider questions of fact, and an appellant is entitled to the performance of that duty on an appeal. Pursuant to such constitutional duty, an appellate court should give consideration to questions of fact, where presented as issues for determination, and to exercise its judgment thereon. Brown v. Louisiana Ry. & Nav. Co., 147 La. 829, 86 So. 281; Esteve v. Continental Southern Lines, La.App.Orl., 1955, 83 So.2d 404, 408; Wooten v. Thompson, La.App. 1st Cir., 1953, 69 So.2d 557, 564.
And, where, in a proper analysis of the facts, an appellate court differs with the trial court or jury, it is its duty to reverse the trial court. Wooten v. Thompson, supra. In this connection, the position of an appellate court was properly stated by our brethren of the Orleans Court of Appeal in Owens v. Felder, 35 So.2d 671, 672, wherein Judge Regan, as the author of the opinion, said:
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
See, also, Anderson v. Morgan City Canning Co., La.App.Orl., 1954, 73 So.2d 196, 201; Jacobs v. Landry, La.App.Orl., 1955, 82 So.2d 481, 484.
However, in reversing the verdict of a jury or a judgment of a trial court, appellate courts are not, ipso facto, casting any aspersions upon the honesty, integrity, and sincerity of the jury or judge. State ex rel. Burnes v. Fornea, La.App. 1st Cir., 1955, 82 So.2d 463, 477.
Here, as in the Owens case, in analyzing the testimony, it would appear easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcript than to accurately observe and note them while listening to the oral evidence of the several witnesses who testified during the course of the trial.
For the aforesaid reasons, we conclude plaintiffs have not sustained their demands and established either liability upon the defendant city or the amount or extent of damages sustained by them as a result of the replacement of the wooden bridge by a concrete structure or by an alteration of the course of the stream.
Accordingly, the judgment appealed is annulled, avoided, reversed and set aside; and
It is now ordered, adjudged and decreed that plaintiffs' demands be, and they are *164 hereby, rejected and their suit dismissed at their cost, including the cost of this appeal.
Reversed.

On Rehearing.
HARDY, Judge.
This rehearing was granted for the purpose of permitting a careful re-examination of the record in order to determine if we had erred in the finding of certain facts, which errors were insistently presented and urged by counsel for plaintiffs in application for rehearing and brief in support thereof. The result of this re-examination, unhappily, has convinced us that we were guilty of error in our interpretation of the testimony with reference to certain facts which are substantially material to a correct determination of this litigation.
Unquestionably, we erred in the conclusion that the removal of plaintiff Treat's cafe building occurred prior to the beginning of installation of a concrete bridge by defendant municipality, and therefore was necessitated by the bridge construction work. We were lead into this error by testimony which indicated that, in the words of our original opinion:
"* * * the installation of the concrete structure to replace the wooden bridge began by the pouring of concrete for the bottom of the new structure October 29, 1957, or fifteen days after the building had been removed from the site." (Emphasis supplied.)
To the contrary, the evidence is convincing to the effect that the actual work on the new bridge structure, the building of the earthern dam, and the consequent deflection of the current of the stream of Prothro's Branch were all accomplished sometime prior to Treat's actual removal of his building. We are further now convinced that this work directly caused a serious erosion of the soil which necessitated the removal of the building. The grassy banks of the stream which theretofore had substantially protected the foundation of the building against dangerous erosion were denuded, earth removed from beneath the building, used in the construction of the temporary earthern dam, and, as a consequence, the raw earth had been exposed to the effect of a heavy current of the stream itself, caused by excessive rainfall. Under these circumstances it must be concluded that the work of defendant as it was actually performed was responsible for the erosion and resultant undermining of the foundations of the building.
We are further impressed by the valid argument of counsel with respect to defendant's failure to call as witnesses the City Superintendent of Streets, the Commissioner of Streets, or any member of the construction crew who were particularly qualified to testify as to the pertinent facts involved. The principle is too well established to require citation that the failure of a party litigant to call witnesses possessed of definite knowledge of material facts entitles the opposing party to the benefit of the presumption that their testimony would have been unfavorable.
The revision of our evaluation of the facts involved necessitates a complete reversal of the conclusions upon which we predicated our original judgment.
As to quantum, which was not considered in our original opinion, since, therein, we rejected plaintiff's demands, we find no error in the allowances made by the district judge.
For the reasons assigned our original decree is set aside and annulled, and the judgment appealed from, in favor of plaintiffs, as rendered by the district court, is affirmed.
GLADNEY, J., dissents, adhering to the views and conclusions expressed in the opinion on original hearing.
GLADNEY, J., dissents from refusal to grant rehearing.