179 So.2d 685 (1965)
Ross M. HAYES
v.
Rosario VIOLA d/b/a Famous Imported Autos & Trucks.
No. 1938.
Court of Appeal of Louisiana, Fourth Circuit.
November 2, 1965.
Vincent T. LoCoco, New Orleans, for plaintiff-appellant.
Cronvich, Ciaccio, Wambsgans & Perry, Joseph M. Perry, Jr., Metairie, for defendant-appellee.
Before McBRIDE, REGAN and BARNETTE, JJ.
*686 BARNETTE, Judge.
Plaintiff-appellant Ross M. Hayes brought suit against Famous Imported Autos and Trucks, Inc., for $537.57 as reimbursement of like amount paid by him to defendant for automobile repairs which he alleges were unsatisfactory because of the negligent and incompetent manner in which they were made, necessitating his expenditure of an additional $562.06 in having them redone by another service garage. From a judgment for defendant rejecting his demands, plaintiff has appealed.
The plaintiff is the owner of an Alfa Romeo Veloce, an Italian sports automobile costing approximately $4,000. It was purchased new in November, 1959, and had been driven about 15,000 miles when he took it to defendant for a complete engine overhaul in July, 1963. This particular make and model car is very uncommon in this area, there being probably less than twentyfive such cars in the City of New Orleans.
The defendant is engaged in sales and repair of imported automobiles, but did not sell nor stock parts for the Alfa Romeo. Plaintiff was satisfied that defendant, and particularly Rosario Viola, its service manager, had had sufficient experience with Alfa Romeos to qualify as an expert in repair of such automobiles. Mr. Viola testified on trial of the case that he had expert knowledge and skill in the servicing of such automobiles, and held himself out to plaintiff as having such skill and knowledge when his services were contracted for.
Apparently, the plaintiff, Mr. Hayes, was himself somewhat of an authority on foreign sports cars and had more than ordinary knowledge of their mechanical details. At least he had sufficient knowledge to understand the importance of precision tuning and adjustment of every part and function of such cars to insure faultless performance. This was what he wanted and had a right to expect from such an automobile. He therefore took more than ordinary interest in the progress of the repairs, visiting the garage on several occasions and discussing details with Mr. Viola and the mechanic, Mr. Bretos. As evidence of his mechanical knowledge and interest, while the engine was disassembled, awaiting a shipment of replacement parts, Mr. Hayes took the cylinder head home and personally polished it to insure smoother performance, and returned it to defendant's shop.
The car was delivered to defendant's shop for engine overhaul on July 2, 1963. After the motor was completely disassembled, Mr. Hayes went over the parts list with Mr. Viola and, according to his testimony, relied on the expert knowledge of Mr. Viola in determining the parts needing replacement. They were ordered and obtained from a dealer in New Jersey. No carburetor parts were included. This became an issue of dispute which we will discuss later.
The car was tied up in defendant's repair shop about six weeks, and upon his payment in cash of the balance of the repair bill, it was delivered to plaintiff on a Saturday. This exact date was never established by the witnesses, and we assume it was about the middle of August.
Plaintiff testified that the car was not running properly and by Monday was running very badly and that day he returned to defendant's garage after work. Mr. Viola attempted some adjustments. According to Mr. Hayes, the car continued to function poorly and by Thursday it stalled completely and was towed in. He took it back to defendant's shop where, according to Mr. Hayes' testimony, Mr. Viola told him he could not do anything with the carburetor but that he did work on it. He received it back again on Saturday.
Plaintiff contends that the car never did run properly but that he was very much in need of it to drive to and from work daily, a distance of about 40 miles round trip, and did attempt to use it until it would no longer run.
*687 Early in October the car stalled again and was towed in to a repair shop owned and operated by a Mr. Benton. Benton's repair order is dated October 11, 1963. Neither the repair order sheet of defendant nor that of Mr. Benton gives the speedometer reading, though there is a blank for that purpose on each one. Mr. Hayes testified that the car had been driven not more than 200 miles from the time defendant delivered it to him. In this he is not contradicted, but this distance would account only for about one week's driving to and from work. He had the car, and apparently used it, for about eight weeks.
Mr. Benton qualified as an expert in repair of foreign automobiles and professed some expert knowledge of Alfa Romeos specifically. We believe he was, at least, as well qualified as an expert as Mr. Viola. Benton removed and overhauled the engine, including the carburetor. Many of the parts replaced by him were the same as those installed by Viola.
Benton testified that when the car was brought to him the compression varied from 70 pounds in the low cylinder to 140 pounds in the high cylinder; the carburetor did not respond to adjustment; the timing chain had too much slack and was rattling; and the rod and crankshaft bearings were "scratched" from improper installation causing foreign particles to damage them and from improper torque "of the bolts on the foot balance". He further testified that some of the valves were burned and bent and did not close properly; that the camshaft was not set properly and the cylinder walls were scored or scratched. A spark plug was cross threaded, requiring machining and rethreading of the hole. Several other specific items were mentioned which, according to Mr. Benton, contributed to the malfunction of the engine. Certain parts were offered in evidence to verify some of these statements. Mr. Hayes paid Benton $562.06 for his repair service and parts and testified that the car ran satisfactorily thereafter.
The defendant attributes the malfunction of plaintiff's automobile to the fact that the carburetor was not amenable to proper adjustment and that parts to overhaul it were not then available; that plaintiff knew carburetor parts were not included in the parts list, and to this extent the overhaul job was incomplete. He contends plaintiff was so anxious to get his car that he took it knowing the job was incomplete in this respect and thereby assumed the risk of engine failure and consequent damage, citing Portier v. Marquette Cas. Co., 150 So.2d 882 (La.App. 4th Cir. 1963), and Jewel v. Dell, 284 S.W.2d 92 (Ky.1955). However, we think the factual situation here renders those cases inapposite.
Plaintiff denies his knowledge that the job was incomplete, although he did know certain parts were not ordered for the carburetor. He contends that defendant undertook to remove and overhaul the engine which, he asserts, would require overhauling the carburetor. Defendant's witnesses testified that the carburetor was cleaned and adjusted as well as it could be without new parts and denied responsibility for any subsequent failure and consequent damage resulting from its malfunction.
It is difficult for us to understand how a malfunctioning carburetor could cause the damage to parts described by Benton, with the possible exception of burnt valves, which conceivably could have resulted from improper gas mixture causing excessive heat in the combustion chamber, as Mr. Benton testified.
In addition to the defense of assumption of risk, defendant argues that Mr. Hayes abused his car by excessive speed and racing the motor during the "breaking in" period. It is argued that this could produce intense heat thereby damaging the engine internally. Plaintiff's witness Benton explained how the damage to bearings and other engine parts were not caused by heat, but by abrasive action of foreign particles or improper torque resulting from improper *688 or negligent installation of the new parts and reassembly of the engine. An examination of the bearings filed in evidence supports the logic of his explanation. Furthermore, the defendant has offered no testimony to support its charge of abuse by plaintiff. This is defendant's assumption. It takes the position argumentatively that there is no other explanation. We think there is another explanation and that the plaintiff has sustained it by a preponderance of the evidence.
We are fully cognizant of the oftrepeated principle that great weight should be given to the findings of fact of the trial court, and except for manifest error, its findings should not be overturned. However, we agree with our brothers of the Second Circuit who dealt with this principle in Johnston v. Bearden, 127 So.2d 319, 326, 327 (La.App. 2d Cir. 1961), and said:
"Defendants contend that the trial court should not be reversed upon a finding of fact unless manifestly erroneous. While it is true, where the issues presented are factual in nature, great weight should be accorded the conclusions and findings of the trial court, nevertheless, it is the constitutional duty of appellate courts to consider questions of fact, and appellants are entitled to the performance of that duty by the court. Pursuant to such constitutional duty, an appellate court should give consideration to questions of fact where presented as issues for determination and to exercise its judgment thereon. Brown v. Louisiana Ry. & Nav. Co., 147 La. 829, 86 So. 281; Esteve v. Continental Southern Lines, La.App. Orleans, 1955, 83 So.2d 404, 408; Wooten v. Thompson, La.App. 1st Cir., 1953, 69 So.2d 557, 564.
"Where, in a proper analysis of the facts, an appellate court differs with the trial court or jury, it is its duty to reverse the trial court. * * *"
See also Dickinson v. City of Minden, 130 So.2d 160 (La.App. 2d Cir. 1960).
In Johnston v. Bearden, supra, and Dickinson v. City of Minden, supra, Judge Ayres, the Court's organ in both cases, quoted from Owens v. Felder, 35 So.2d 671 (La.App. Orleans 1948), wherein Judge Regan explained the reason appellate courts sometimes feel constrained to reverse the trial court on a finding of fact. The Court there said:
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
In the discharge of our constitutional duty we have carefully analyzed the testimony of the witnesses as it is revealed by the transcript and have arrived at the conclusion that this is a case in which justice cannot be done without a reversal of the trial court on the factual issues.
Liability of garagemen for damages resulting from defective work is the subject of discussion in Annot., 92 A.L.R.2d 1408 (1963). This liability may involve elements of contract and also the principles of the law of negligence. The few cases we have found in Louisiana jurisprudence are in harmony with this general statement.
The right of recovery for negligent repair was unheld in St. Cyr. v. Poche, 110 So.2d 140 (La.App. 1st Cir. 1959); Hoye & Williams v. Farmer, 38 So.2d 810 (La. App. 2d Cir. 1949); Smith v. Slatten, 18 So.2d 860 (La.App. 2d Cir. 1944).
*689 Furthermore, we are of the opinion that the defendant, particularly Mr. Viola, its service manager with whom plaintiff dealt directly, held out to plaintiff the representation of skill and expert knowledge in the repair of foreign cars. Plaintiff had a right to reply on this representation. In Smith v. Ponder, 169 So.2d 683, 684, 685 (La.App. 1st Cir. 1964), the Court said:
"* * * The Courts have repeatedly held that a person who holds himself out as skilled in any art, trade or profession is primarily liable for any damage to persons who place themselves or their belongings in his charge, since they are justified in relying on the skill which he holds himself out as possessing. The expert has an obligation to warn of any incidental danger of which he is cognizant due to the particular knowledge of his specialty. Mixon v. Brechtel, La.App., 174 So. 283, American Manufacturers Mutual Insurance Company v. United Gas Corporation, La.App., 159 So.2d 592."
Defendant's plea of assumption of risk is an affirmative defense. It has not been established by a preponderance of evidence that plaintiff was warned that use of the car with malfunctioning carburetor could cause the damage complained of or that it did in fact cause the damage. Nor are we impressed with the defense of contributory negligence based upon the mere assumption that plaintiff "must" have abused the car, in the absence of testimony to support such assertion.
For these reasons, the judgment appealed from is reversed and judgment rendered in favor of plaintiff-appellant, Ross M. Hayes, against defendant-appellee, Famous Imported Autos and Trucks, Inc., in the sum of $537.57 with legal interest thereon from date of judicial demand and all costs of these proceedings in both courts.
Reversed; judgment rendered.