220 So.2d 720 (1969)
Mrs. Vivian C. BARKER et vir, Plaintiffs-Appellants,
v.
The PHOENIX INSURANCE COMPANY et al., Defendants-Appellees.
No. 11145.
Court of Appeal of Louisiana, Second Circuit.
March 3, 1969.
Rehearing Denied April 3, 1969.
Writ Refused June 9, 1969.
*721 Lowe & Benton, Minden, for plaintiffs-appellants.
Lunn, Irion, Switzer, Johnson & Salley, Shreveport, for West-Clark Motors, Inc., The Phoenix Ins. Co., Noel Alford, Joe H. Stanfield, W. D. Roberts, and J. L. Mangrum, Jr., defendants-appellees.
Joseph R. Bethard, Shreveport, for Elton Caswell, d. b. a. Caswell's Wheel & Brake Service, and The Travelers Ins. Co., defendants-appellees.
Before GLADNEY, AYRES, and PRICE, JJ.
AYRES, Judge.
By this action plaintiffs, husband and wife, seek to recover compensation and damages, the wife for personal injuries sustained in a motor vehicle accident and the husband, hospital and medical expenses incurred and to be incurred in the treatment of his wife's injuries, for loss of his wife's earnings and for property damage to the automobile. The accident is alleged to have been caused by a defective cracked or broken sector shaft, an integral part of the power steering mechanism of a 1963 model Dodge purchased by the husband, Charles R. Barker, from West-Clark Motors, Inc., of Minden on November 3, 1965, as a used car, under the usual warranty that it was in good operating condition and would give the character of service which the purchaser had a right to expect.
This action is predicated not only upon an alleged breach of warranty as to the fitness of the car, but upon a tort for an alleged failure to properly inspect the car and to place it in good operating condition prior to its sale and delivery, or to remedy the defects subsequently called to the motor company's attention.
Made defendants in addition to West-Clark Motors, Inc., and its surety were the motor company's manager, car salesman, shop foreman, and mechanic, as well as Elton Caswell, an independent operator of a wheel and brake service, and his insurer. Chrysler Corporation, manufacturer of the automobile, and its surety were also made defendants.
The defendant motor company and its employees denied the existence of any defect in the steering apparatus at the time the car was sold to Barker and alleged that the damage to the car sustained in a prior accident had been repaired so far as "all damaged parts * * * which were visibly damaged and which, on reasonable inspection, could be ascertained to have been damaged." Hence liability was denied and, in the alternative, these defendants alleged Mrs. Barker was guilty of contributory negligence in operating the motor vehicle. Defendant Caswell and his surety assert that Caswell made certain repairs to the automobile, but only such as were specified by West-Clark Motors, Inc., and hence deny liability, and, also, in the alternative, plead contributory negligence on the part of Mrs. Barker. Chrysler Corporation and its surety were dismissed on the sustaining of a motion for a summary *722 judgment, predicated upon plaintiffs' admission that they had no evidence of faulty design or fault in the parts or materials used in the manufacture of the automobile.
After trial the court concluded the evidence was insufficient to establish that the sector shaft was cracked and concluded it had possibly sustained a single-impact failure. It was also observed that it was impossible to determine whether the damaged sector shaft caused the accident or whether the accident damaged the sector shaft. Plaintiffs' demands were accordingly rejected and they prosecute this appeal.
The issues are factual in character and concern where and when the sector shaft sustained damage, and the reasonableness of the subsequent inspections of the car and of the adequacy of the repairs made by the motor company prior to the sale of the car to Barker.
The automobile with which this litigation is concerned was purchased new by West-Clark Motors, Inc., from the Chrysler Corporation shortly prior to March 26, 1963 for, on that date, West-Clark Motors, Inc., sold it new to E. L. Young, Jr., of Ruston. More than two and a half years thereafter in October, 1965, this automobile was involved in a wreck. Soon thereafter, Young purchased another car from West-Clark Motors, using the wrecked car as a trade-in.
Plaintiffs had no notice or knowledge of any defect in or damage to the car, but informed the motor company and its employees that if the car had any serious defect or damage they did not want it. They were assured by the manager and salesman for the motor company that one front fender had been straightened, the other replaced, and the front end aligned, and were further assured there were no serious defects in the car. Upon these representations, Barker purchased the car November 3, 1965.
The record discloses, however, that when Young delivered the car to West-Clark Motors, Inc., following the accident in October, 1965, both front wheels were twisted and warped and there was damage to the steering assembly including the Pittman arm which was bent. The sector shaft, of casehardened steel, is approximately 1 1/8" in diameter. The Pittman arm has an overall length of approximately 6¾". The sector shaft, whose movement is controlled by the power steering mechanism, fits at right angles into one end of the Pittman arm, whose movement it controls by means of slots or grooves in which it is enmeshed. The Pittman arm is attached to the tie-rod assembly. Through this mechanism the operator of the car directs its movements by turning the steering wheel.
In the process of making repairs to the car after its receipt from Young, a ball-joint suspension was replaced. Heat was applied to the Pittman arm in, at least, a partially unsuccessful attempt to restore it to its former shape.
From the time of Barker's purchase, difficulties were experienced in steering the car. During the 26 days in which Barker owned the car prior to its wreck in which Mrs. Barker was involved, the car was returned to the motor company on at least three occasions. Various attempts were made to correct the defects in its steering mechanism. These included replacement of the front shock absorbers. None of the efforts were successful.
Mrs. Barker, while driving the car November 29, 1965, was involved in an accident in the early morning hours before daylight. She was employed at a poultry processing plant in Arcadia, as was Mrs. Pearl Langley, and as was contemplated by Mrs. Emma B. Hicks. They shared rides alternately with one another. On this occasion Mrs. Barker had picked up Mrs. Hicks, after which they came to and followed Interstate-20 for a distance and then proceeded over a rural asphalt road to the home of Mrs. Langley. Upon learning that Mrs. Langley had already left for the poultry plant in her own car, Mrs. Barker, accompanied by Mrs. Hicks, retraced her route *723 toward I-20 proceeding at about 30-35 m. p. h., and, on approaching a curve to the left, suddenly discovered she could no longer steer the car. The steering wheel was turned "round and round" without any effect on the movement of the car. Instead of following the curve, the car continued generally straight ahead, left the road, crossed the ditch, ran into a slight embankment and turned over about 20 feet from the road. The car sustained extensive damagesome to the front bumper, grill, and fenderwhen it struck the embankment, and then to its left side and top as it turned over. The front wheels were unaffected. On examination, the Pittman arm was found to be hanging and the sector shaft to have been broken in two near or just above the top of the Pittman arm.
Though controverted by defendants' experts and witnesses, the consensus of those testifying for plaintiffs, including Jack Fuller, long experienced in the wrecking car business and who hauled the car into his yard, is that the severance of the sector shaft revealed, by rust and discoloration, an old break extending more than half way through the shaft. John D. Calhoun and Joseph H. Barnwell, professors in engineering at Louisiana Polytechnic Institute, corroborated Fuller's testimony. Mrs. Barker's inability to control the car was obviously due to completion of the break of the sector shaft. Until that moment, she had been able to steer the car and, in fact, had turned around at Mrs. Langley's home, a distance back of two-fifths of a mile. Mrs. Barker's testimony as to her inability to control the movement of the car was corroborated by the testimony of Mrs. Hicks and by Mrs. Barker's exclamatory remarks to that effect.
In the first wreck in which this car was involved and while owned by Young, immense force was applied to the sector shaft, clearly sufficient to break it. It bent the Pittman arm to which it was attached in a firm, stationary position. Both of these parts were shown to have been of comparable strength. No force sufficient to break the sector shaft was shown to have resulted in the second accident. In fact, the break was obviously complete before the car left the highway and before it reached the embankment, as the steering wheel was being turned freely without affecting the direction in which the car was traveling.
From these facts and the constant difficulty experienced with the steering mechanism of the car, the conclusion is irresistible that the sector shaft was cracked and damaged in the first accident. Every part of the steering mechanism, other than the sector shaft itself, was examined and tested by the motor company. The force applied to the Pittman arm, sufficient to bend it, should have prompted an examination of the sector shaft to which it was attached, for, obviously, the same force was applied to the shaft.
Where only questions of fact are involved, great weight is generally accorded the conclusions and findings of a trial court because of its position to better observe the witnesses as they testify and to judge their credibility, as well as to appraise and evaluate their testimony. However, as was pointed out in Owens v. Felder, 35 So.2d 671, 672 (La.App., Orl.1948):
"* * * it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
In this regard it may be pointed out that this trial consumed a period of three days, March 25, 28, and April 22, 1968, at the conclusion of which it was submitted without oral argument, whereupon the court immediately rendered judgment. The transcript of this record embraces more than 700 pages.
*724 Despite the general rule that considerable weight be given to the conclusions and findings of the trial court, as we observed in Dickinson v. City of Minden, 130 So.2d 160, 163 (La.App., 2d Cir., 1960):
"It is, however, the constitutional duty of appellate courts to consider questions of fact, and an appellant is entitled to the performance of that duty on an appeal. Pursuant to such constitutional duty, an appellate court should give consideration to questions of fact, where presented as issues for determination, and to exercise its judgment thereon. Brown v. Louisiana Ry. & Nav. Co., 147 La. 829, 86 So. 281; Esteve v. Continental Southern Lines, La.App.Orl., 1955, 83 So.2d 404, 408; Wooten v. Thompson, La.App. 1st Cir., 1953, 69 So.2d 557, 564.
"And, where, in a proper analysis of the facts, an appellate court differs with the trial court or jury, it is its duty to reverse the trial court."
The facts to which we have already referred bring this case within the pronouncements in the Dickinson and Owens cases.
In Drummond v. American Insurance Company, 159 So.2d 61 (La.App., 1st Cir. 1963), an action against a used automobile dealer and its insurer for personal and property damages sustained by plaintiffs in two accidents resulting from brake failure, it was held, under facts similar to those established here, the evidence sustained a finding that the used car dealer was negligent in failing to properly inspect an automobile, and in failing to properly repair the braking system; that after the automobile had been returned to its garage on numerous occasions the defendant should have realized there was something radically defective in the braking system; that the plaintiffs were not contributorily negligent in continuing to operate the automobile; and that, though they were aware the brakes were not operating properly, such knowledge did not amount to notice that the brakes were about to fail completely.
While a dealer in used or secondhand motor vehicles who undertakes to recondition a vehicle for resale is not an insurer of the safety thereof, he is nevertheless under a duty to use reasonable care in making tests for defects which would render the vehicle a menace to persons using or coming into contact with it and making it reasonably safe for use on the highways. He is charged with the knowledge of patent defects or defects which are discoverable in the exercise of ordinary care. Blashfield Cyclopedia of Automobile Law and Practice, Vol. 7A, page 204, § 4812. See, also, 78 A.L.R.2d 484, § 5(a).
We believe that, had the car been properly inspected and properly road tested, the defect would have become apparent. Certainly, considering the number of times it had been returned to the defendant motor company's garage within the short period of 26 days in which plaintiff Barker owned the car, the motor company and its employees should have realized there was something radically defective in the steering system. This appears to be particularly true in its failure to inspect the sector shaft, the only part of the steering system not examined, especially in view of the continual complaints made, as well as defendants' knowledge of the immense force applied to the Pittman arm to which the sector shaft was attached in a stationary position.
It appears most unreasonable, under the facts of this case, that the sector shaft, the "last link" in the steering system, was not inspected in view of the knowledge on the part of the motor company that the Pittman arm, to which it was attached, had sustained such a tremendous force to bend it.
We are of the opinion, therefore, that West-Clark Motors, Inc., and its employees, who failed to properly inspect this automobile *725 and make the necessary repairs to place it in a safe condition before its resale, were negligent, and that they must be held responsible for the damages sustained by plaintiffs.
Defendant Caswell, pursuing an independent and specialized service, apparently performed only such repairs as were designated by West-Clark Motors, Inc. He was not charged with the duty of ascertaining, by inspection, that other defects existed and that additional repairs should have been made. We find no liability on his part.
No basis was shown for holding either Mr. or Mrs. Barker guilty of negligence.
Lastly for consideration is the quantum of damages to which plaintiffs are entitled.
Plaintiff Mrs. Vivian C. Barker, at the time of the accident, was 36 years of age. She had been employed for the past four years by a poultry processing plant. She lost 4½ months from her employment on account of the accident.
In the occurrence of the accident Mrs. Barker was thrown from her automobile, temporarily stunned, dazed, and rendered unconscious. Upon her admittance to the Minden Sanitarium she was seen by Dr. R. McIntyre Bridges who found that she had sustained multiple lacerations of the face and mouth and lacerations of the right arm and hand, bruises of the right and left legs, a dislocated right elbow, a comminuted compound fracture of the head of the radius, and a fracture of the ulna on the right side. She also sustained a laceration to her mouth involving the upper lip where there was a partial evulsion which was repaired by plastic surgery. The small lacerations on the forehead were closed; manipulation of the right elbow with a reduction of the dislocation was performed; a manipulation of the fractured radius was carried out; and a cast was applied extending from her fingers to above her elbow. Mrs. Barker was hospitalized for approximately two weeks. Sedatives were administered to reduce pain in the afflicted parts. This pain was characterized as severe. Enzyme therapy was administered to reduce swelling.
After discharge from the hospital plaintiff was at the home of and received the attention of a relative for a time, returning to Dr. Bridges every two weeks, under whose care she continued for approximately three months. The cast was removed after seven weeks. Although Mrs. Barker recovered from the injuries, there were marked residuals of a permanent character. With reference to these, Dr. Bridges testified from an examination of March 23, 1968, over two years after the accident. The examination, he stated, revealed a well-healed scar on the face and a disfiguration and a discoloration of the upper lip where she had sustained a partial evulsion. Small scars, relatively unnoticeable, remained on her forehead. There was a two-inch scar on her right forearm. Dislocation of the elbow produced a permanent deformity. Though the normal range of flexion and extension of the elbow was 150 degrees, the joint had become, more or less, ankylosed and that flexion and extension were reduced to a mere 100-degree range. This deformity was said by the doctor to carry a 23 percent disability of the arm. Because of the nature of the injuries sustained, the doctor expressed the possibility that Mrs. Barker would hereafter experience discomfort in weather changes, obviously meaning during fluctuation of barometric pressure.
For the pain and suffering undergone by Mrs. Barker, and for the permanent effects of her injuries, particularly to her arm and elbow, the disfiguration to her face and arm and especially to her lip, it is our opinion that an award in her favor in the sum of $15,000.00 would not be excessive. Plaintiff Charles R. Barker is entitled to recover for ambulance services, $15.00; hospitalization, $600.45; medical expenses, $399.00; automobile damage, deductible from insurance, $100.00; loss of *726 wife's wages for 4½ months, $833.00or a total of $1,947.45.
Therefore, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of Mrs. Vivian C. Barker in the sum of $15,000.00 and in favor of plaintiff Charles R. Barker in the sum of $1,947.45, both against West-Clark Motors, Inc., and The Phoenix Insurance Company, in solido, with 5 percent per annum interest thereon from judicial demand until paid, and all costs, including the cost of this appeal and an expert-witness fee for Dr. R. McIntyre Bridges in the sum of $100.00.
Reversed and rendered.
Rehearing denied.
PRICE, J., dissents from refusal.