228 So.2d 667 (1969)
Samuel G. HENSON
v.
TRAVELERS INSURANCE COMPANY, Allied Chemical Corporation, Gray and Company, Inc. and Gurtler, Hebert and Company, Inc.
No. 7771.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
Rehearing Denied December 22, 1969.
*668 Reuter, Reuter & Schott by Arthur C. Reuter, New Orleans, for defendant-appellant.
Ralph Brewer, Baton Rouge, for plaintiff-appellee.
Before LOTTINGER, REID and BLANCHE, JJ.
LOTTINGER, Judge.
This is a suit ex delicto brought by Samuel G. Henson for damages against Allied Chemical Corporation, hereinafter sometimes referred to as Gurtler, Hebert, and its insurer allegedly resulting when the plaintiff stepped into a piling hole on a construction site. Henson was employed by Leonard Construction Company, the general contractor under a contract from Allied Chemical Corporation, the owner. An exception of no cause of action was filed on behalf of Allied Chemical Corporation and its insurer, maintained by the Trial Court and affirmed by this Court at 208 So.2d 366. This case was tried before a jury which rendered a verdict in favor of the plaintiff for $35,000.00. The defendants, Gurtler, Hebert and Company, Inc., and its insurer, have perfected a suspensive appeal, and the plaintiff has taken a devolutive appeal seeking an increase in the award to $100,000.
The record points out that Leonard Construction Company, hereinafter sometimes referred to as Leonard, was the general contractor to build the Geismar plant for the Nitrogen Division of Allied Chemical Corporation. Gurtler, Hebert was a subcontractor from Leonard for the purpose of driving pilings. Samuel G. Henson, plaintiff, was employed by Leonard as a carpenter and began work at the construction site in November, 1965. At the commencement of his employment with Leonard on this particular job, Henson's duty was that of building work sheds at the construction site. After these work sheds were completed, the prime duty of the carpenters working for Leonard was the construction of wooden forms to be used in *669 the construction of the large concrete foundations necessary in such a plant as Allied was having constructed. During the early part of 1966 it rained extensively, which caused the construction site to become a sea of mud and water. It was during such a period of wet weather that Henson alleges that as he was carrying a small form to a piling, around which a foundation form was being constructed, that he stepped into a water covered piling hole causing severe injury to his back.
In essence, the plaintiff alleges that when Gurtler, Hebert drove the pilings into the ground, they left holes "unattended, undesignated and unbarracaded." He further contends that when the rains came, these holes along with other natural holes on the construction site filled with water and it was impossible to tell which holes contained pilings.
The plaintiff called several witnesses who testified that at the time the accident took place, February 9, 1966, the construction site was very muddy. One witness in particular was following Henson at a distance of 15 yards and saw him fall. This same witness placed his hand in the water which filled the hole and felt a metal casing which would be the top of the piling. This piling could not be seen above the surface. Plaintiff's witnesses testified that all of the driven pilings were either right at the surface, below the surface, or not more than one inch above the surface, and further, that after the pilings were driven into the ground, they were not marked by Gurtler, Hebert in any manner. Other witnesses stated that bulldozers moved the mud around in order to level the area in which construction was taking place and could have covered some of the holes. Another witness stated that at times the heavy rains would wash away the soil from around the driven pilings causing a hole.
As above noted, this case was tried before a jury, and we assume that after due consideration of all the evidence presented and after faithfully following the instructions of the Trial Judge, the jury reached its verdict. Needless to say, after twelve jurors have intently listened to the testimony, examined all of the documented evidence introduced at the trial, and followed the instructions of the Trial Court, an appellate court is most reluctant to reverse the findings of the jury on a question of fact and the application of the facts as found to the principals of law presented by the Court. But, defendant-appellant has very aptly presented to this Court the constitutional duty which this Court has as very scholarly stated by our Brethern on the Fourth Circuit in Hayes v. Viola, 179 So.2d 685, 688, to-wit:
"We are fully cognizant of the oft-repeated principle that great weight should be given to the findings of fact of the trial court, and except for manifest error, its findings should not be overturned. However, we agree with our brothers of the Second Circuit, who dealt with this principle in Johnston v. Bearden, 127 So.2d 319, 326, 327 (La. App. 2d Cir. 1961), and said:
`Defendants contend that the trial court should not be reversed upon a finding of fact unless manifestly erroneous. While it is true, where the issues presented are factual in nature, great weight should be accorded the conclusions and findings of the trial court, nevertheless, it is the constitutional duty of appellate courts to consider questions of fact, and appellants are entitled to the performance of that duty by the court. Pursuant to such constitutional duty, an appellate court should give consideration to questions of fact where presented as issues for determination and to exercise its judgment thereon. Brown v. Louisiana Ry. & Nav. Co., 147 La. 829, 86 So. 281; Esteve v. Continental Southern Lines, La.App.Orleans, 1955, 83 So.2d 404, 408; Wooten v. Thompson, La.App. 1st Cir. 1953, 69 So.2d 557, 564.
`Where, in a proper analysis of the facts, an appellate court differs with the trial *670 court or jury, it is its duty to reverse the trial court.'"
And in Owens v. Felder, La.App., 35 So.2d 671, the position which an appellate court finds itself in was very adequately stated as follows:
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
Even though as was above stated, that an appellate court would be reluctant to reverse a jury, if that court after having read the entire record and studying the testimony of the witnesses at length finds that the jury reached the wrong verdict, it is undoubtedly the duty of the appellate court to reverse the jury's verdict. In the instant proceedings, we find that the jury was in error and therefore reverse its findings.
"That a plaintiff must make out his case by a preponderance of evidence and with reasonable certainty is so well established that citation of authority for this proposition of law is unnecessary." Hardin v. Operating Co., 212 La. 467, 32 So.2d 893 (1947). In light of the above statement, the plaintiff must prove that the injury which he received was a result of stepping into the piling hole as alleged, that the piling hole was caused or made by the defendant, and that the defendant breached some duty owed to the plaintiff and said breach of duty was the proximate cause of the injury. The defendant has alleged that the contributory negligence of the plaintiff precludes any recovery on his part.
After reviewing the record, we find that the plaintiff has shown without doubt that he stepped in a hole, and that in this hole there was located a piling, therefore leading to the presumption that the hole was caused by the pile driver of defendant. But, we do not find that the plaintiff has proved who created the hole which he fell in. There was testimony to the effect that natural wash out caused holes around the pilings.
Conceding for the sake of argument that the plaintiff has proved that the defendant and nothing else caused the hole which he fell in, and that the defendant breached a duty owed to the plaintiff, there is no question but that the plaintiff had been working on this particular construction site for several months and was well aware that the defendant was driving pilings in the area in which the plaintiff was working, that some pilings were in a pattern and some were not, and that some were below the surface of the ground. But we are of the opinion that when the plaintiff walked through this puddle of water not knowing whether this was a harmless hole or a hole with a metal encased piling at the bottom of it, he was negligent, and his negligence was a direct contributing factor to this accident, which contributory negligence precludes the plaintiff from any recovery. There was testimony that someone had stepped in a hole before, but the number of instances of people stepping in piling holes is very small compared to the number of individuals working on this job.
"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm. Restatement of Torts 2d, Section 463. The standard of conduct to which a person must conform for his own protection is *671 that of a reasonable man under like circumstances. Id., Section 464(1). See Sloan v. Flack, La.App. 3 Cir., 150 So.2d 646." Fontenot v. Fidelity General Insurance Company, 185 So.2d 896, La.App. 3rd Cir. 1966. We do not feel that the plaintiff was acting within the standard of conduct required by the above rule when he walked through a puddle of water well knowing that a dangerous hole could be concealed thereunder.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is reversed. All costs of this appeal are to be paid by plaintiff-appellee.
Judgment reversed.