280 So.2d 251 (1973)
Jack M. CAUSEY et al., Plaintiffs-Appellants,
v.
A. E. DEAN, Jr., et al., Defendants-Appellees.
No. 12115.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1973.
*252 Patrick W. Looney, Edward O. Kernaghan, John M. Brown, Shreveport, for plaintiffs-appellants.
Lunn, Irion, Switzer, Johnson & Salley by Charles W. Salley, Shreveport, for A. E. Dean, Jr., and others.
Mayer & Smith by Charles L. Mayer, Shreveport, for Bossier General Hospital.
Before AYRES, BOLIN and HEARD, JJ.
HEARD, Judge.
This medical malpractice action was brought by Jack M. Causey, individually and as administrator for his minor son, Jack Kevin, and Hazel Tyler Causey. Named defendants are Dr. A. E. Dean, Jr., orthopedic surgeon, and Bossier General Hospital.
The Causeys were involved in an automobile-pickup truck collision on March 21, 1969, and were taken, over Mr. Causey's objection, to Bossier General Hospital for treatment. As a result of the accident Mr. Causey suffered a fractured right cheek, one or more compression fractures to vertebrae in his spine, a fractured right hip, and injuries to his right leg and right foot. Mrs. Causey received a dislocation of her right shoulder, injury to her back, fractured right leg and left ankle. Kevin Causey received a broken jaw and fractured right leg. They were treated by Dr. Dean until he was asked to release them to Dr. Harold R. Bicknell on June 19, 1969. They alleged they received inadequate and negligent treatment of these injuries from Dr. Dean and the hospital rendered improper and inadequate treatment to them without proper authorization and allowed an inexperienced, inadequately trained orderly to place Mrs. Causey's right shoulder in traction in an improper manner. Defendants denied liability and pled contributory negligence, alleging plaintiffs failed to (1) follow medical directions, (2) take proper exercise and (3) return for observation at the proper time, and engaged in activities which would tend to prolong disability. Without assigning written reasons, the trial court rendered judgment in favor of defendants, rejecting plaintiffs' demands. Plaintiffs appealed.
Plaintiffs now contend the facts show negligence on the part of defendants and that defendants did not use reasonable care and diligence along with their best judgment in the application of their skills. We cannot agree with either contention.
On the question of consent for treatment, Causey alleged he did not authorize Dr. Dean to operate on his son or wife, while he admittedly consented to his operation. The evidence, however, does not support his allegation. Dr. Jones' deposition and Dr. Dean's testimony stated Causey told Dr. Dean to take care of Kevin and his wife. Dr. Dean further stated he explained to Causey and his wife the necessity *253 for her operation and was met with no objection. Nor was any objection made to their treatment during their entire stay in the hospital. Mr. Causey's mother signed the forms for Kevin and his mother.
Express consent is not, however, always sacramental and under certain circumstances may be implied or presumed. Thus a patient who voluntarily submits himself for treatment, relying entirely upon the surgeon's skill and care to decide for him what shall be done, gives a general consent by implication, at least, to such operation as may, in the surgeon's skill and professional judgment, be reasonably necessary. Carroll v. Chapman, 139 So.2d 61 (La.App., 2d Cir. 1962). Under the circumstances and facts, it must be found that Dr. Dean did receive authorization to perform the necessary operations.
Causey's major personal complaint was Dr. Dean's alleged failure to diagnose and treat his lower back injury until a month after the accident. Causey's testimony that he specifically complained about his back while in the hospital was contradicted by Dr. Dean as well as Dr. Fox's testimony and Dr. Jones' review of the doctor's and nurses' hospital notes as stated in his deposition. Both Dr. Dean and plaintiffs' own expert, Dr. Bicknell, found nothing unusual or negligent in not X-raying that part of the lower back because of the great difficulty in diagnosing an injury in that area when the patient also had a hip injury. Since there were no specific back complaints and Dr. Dean's examinations revealed his back was stable with no aggravation, misalignment or other signs of damage, it was not negligent for Dr. Dean to X-ray it at a later date. Once having diagnosed the back injury it is clear that it was properly treated and that any disability suffered by Causey in his back or other area was the result of the trauma received in the accident and not from negligence or inadequate treatment from Dr. Dean or the hospital.
Mrs. Causey received the most severe injuries. She was in a very serious condition and was hospitalized for an extended period of time. The alleged negligence of both Dr. Dean and the hospital concerns the placing of her right arm in traction. Dr. Dean ordered her placed in traction on April 12, following her stay in the Intensive Care Unit. He did not oversee the traction being set up nor the arm placed in it, but instructed a nurse to do it, which she did with the help of an orderly. While Dr. Dean did not see her until the 14th, his partner, Dr. Fox, saw her on the 13th. Dr. Dean adjusted the traction as needed. Although Dr. Bicknell testified he personally supervises the setting up of traction himself, he further stated it could be set up under the direction of a qualified nurse and that this method was used by some orthopedics in the community. There is no evidence the traction was improperly set up nor that she was injured in any way by having been placed in it. Dr. Bicknell stated the injuries he saw to her shoulder were from the accident.
In stabilizing her fractured tibia, in the initial surgery, Dr. Dean used metal screws because of her critical condition.
Drs. Dean, Fox and Jones stated this was the proper procedure under the circumstances and Dr. Bicknell concurred, further stating it is a matter of professional opinion. There was, however, a non-union of the fracture, and Dr. Dean told Mrs. Causey of the possible need for further surgery. Dr. Dean did not feel, in his judgment, that she was in condition for further surgery at that time. She shortly thereafter removed herself from Dr. Dean's care, however, and was operated on by Dr. Bicknell, who performed the operation without studying her previous X-rays, hospital records or consultation with Dr. Dean. Her contention that Dr. Dean should have operated sooner is without merit. Drs. Fox and Jones concurred with Dr. Dean's evaluation of her situation, and there is no evidence that a reasonable *254 delay would result in any disability. This, again, was a question of professional judgment. Dr. Bicknell stated any disability Mrs. Causey may be suffering from is a result of the accident and not the treatment given her by Dr. Dean.
At the time of trial, Kevin Causey's right leg was one and one-fourth inches shorter than the other, and it is plaintiffs' contention this is the result of a further trauma when Dr. Dean removed the cast. This contention is pure speculation. The evidence shows only a possibility of trauma caused by Dr. Dean's manipulations of his knee at that time. Dr. Bicknell stated there was always a possibility one leg will become shorter as the result of a leg fracture, and that other than trauma, taking the cast off too soon (before the fracture solidly united) could result in the same. After removing the cast, clinically checking the leg and X-raying it, Dr. Dean found the bone in good alignment and stable, and determined the cast could remain off. Dr. Fox stated he would have also recommended the cast be removed and Dr. Bicknell said such decisions are a matter of professional judgment and he had no quarrel with Dr. Dean's decision. Kevin's treatment by Dr. Dean was then terminated and any problems which developed were treated by Dr. Bicknell without studying Kevin's prior X-rays. We find, as did Dr. Bicknell, that Dr. Dean applied proper skills and used his best judgment in Kevin's treatment.
Plaintiffs rely on Favalora v. Aetna Casualty & Surety Company, 144 So.2d 544 (La.App., 1st Cir. 1962) and Albritton v. Bossier City Hospital Commission, 271 So. 2d 353 (La.App., 2d Cir. 1972). We agree with these opinions. However, we find no evidence that Dr. Dean either deviated from an accepted standard, or that, even though he conformed with standards and procedures observed by other medical authorities in good standing within the community, the procedures relied upon were not shown to constitute negligence in that they failed to guard against injury to a patient from a reasonably foreseeable contingency. Nor was it shown the procedures were faulty or contrary to what members of the profession have been taught in medical institutions of learning. (Favalora, supra, 144 So.2d 550-551). In addition to defendant and his witnesses, plaintiffs' own witness, Dr. Bicknell, concurred in this opinion.
Plaintiffs failed to carry the necessary burden of proof both as to the negligence of Dr. Dean and any improper or inadequate care received from the hospital, and we therefore affirm the judgment appealed, at appellants' cost.