HALL, Judge.
Plaintiff engaged defendant to perform a major overhaul of the engine of his Porsche automobile. Alleging that the repairs were improperly done plaintiff had a second complete overhaul of the engine made by Durham Motors.
Thereafter plaintiff filed this suit against defendant for $559.06, being the cost of the second overhaul, plus damages in the sum of $235.50 for loss of use and depreciation of his car and an additional sum of $35.25 expended by him for bus and taxicab fares.
The Trial Judge, being of the opinion that “plaintiff has failed to make out a case,” rendered judgment dismissing plaintiff’s suit at his cost. Plaintiff appealed.
During the hearing of this appeal plaintiff abandoned all claims against defendant except the item of $559.06 representing the cost of the second overhaul.
The record reveals the following facts:
On June 2, 1967 plaintiff contracted with defendant for a major overhaul of the engine of his Porsche automobile, a small foreign car. The repairs were completed and the car returned to plaintiff on October 4, 1967. Plaintiff paid the repair bill which amounted to $806.50. After the car was returned to him plaintiff complained that the engine had a massive oil leak; that the acceleration was poor and the exhaust noise was excessive. He testified that he returned the car to defendant for correction no less than five or six times but that the deficiencies were never completely corrected.
On October 18, 1967 plaintiff took the car to Durham Motors for a check of the engine. Durham’s shop foreman and mechanic, Mr. Doherty, testified that an external examination of the engine indicated the car was leaking oil, the accelerator would not open the throttle completely and he suspected the cylinders were of different types and the spark plugs were of different types. Mr. Durham recommended a complete overhaul.
On January 10 or 11, 1968 plaintiff took the engine (which had been removed from the car) to Durham Motors and requested a complete overhaul. At the time plaintiff delivered the engine to Durham Motors the right cylinder head and the metal shrouding had been removed. Mr. Doherty testified that plaintiff told him that it was he who had removed the engine from the car and had taken off the cylinder head and shrouding.
Mr. Doherty disassembled the engine and found the washers and seals of the head were missing; heat deflectors were missing; main bearings and connecting rod bearings were scored; the crankshaft had been machined and had become scored; and one of the cylinders and its piston were mismatched and the spark plugs were mismatched. The engine was repaired and returned to plaintiff within 15 or 20 days. Durham’s bill amounted to $559.06 which plaintiff paid.
Mr. Benton, president and operator of the defendant corporation, testified that all of the work performed by him was properly done; that if the engine had to be reworked by Durham the cause of the damage was plaintiff’s mishandling of the car.
*736 There is testimony to the effect that when Benton delivered the car to plaintiff after he had finished the repairs he cautioned plaintiff not to operate it above 3,000 R.P.M.’s. A witness, Curtis Everett, who was present at the time, testified that notwithstanding this caution plaintiff got in the car and left “exceeding 5,000 R.P.M.’s”; that he had owned a Porsche automobile in 1957 and could tell this by the sound of the engine, although he had not heard the sound of a Porsche engine since 1957. Plaintiff admitted that he had exceeded 3,000 R.P.M.’s but only on one occasion.
Mr. Benton testified that on one occasion after he had repaired the car plaintiff telephoned him and told him the heat deflectors were missing and that he told plaintiff “ * * * I would not acknowledge that point, but I would check immediately. He said it was done took apart. Said a friend and I are tearing it down to race it.” (emphasis supplied)
Mr. Doherty, Durham’s mechanic, testified that the piston inside one of the cylinders was mismatched but testified that it would not cause the engine to run improperly but would eventually cause wear especially if the car was raced. He had no idea who put the mismatched spark plugs in the engine. He also testified that the scoring of the bearings may have been caused from dirt in the oil. He said the crankshaft had been machined once but could not say that it caused a misfit. His position was that as a matter of policy he never machines a crankshaft but always puts in a new one so as to take advantage of the manufacturer’s warranty.
Plaintiff blames the massive oil leak on a missing carburetor bolt. Mr. Benton testified that he specifically remembered putting the three bolts in the carburetor. He further testified that all parts that he replaced in the engine were new parts which he had obtained for the specific engine from a parts supply house in Florida and that the car was in perfect condition when he delivered it to plaintiff.
The appeal involves questions of fact only and we find no manifest error in the decision reached by the Trial Judge.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by plaintiff-appellant.
Affirmed.