WATSON, Judge ad hoc.
The appeal of these consolidated cases involves a dispute about repairs to a four cylinder Wisconsin engine, property of Dibert, Bancroft & Rqss Co., Ltd. and overhauled by Wendelken Machine Shop, Inc. For convenience, the former will be referred to simply as Dibert and the latter as Wendelken.
The first suit was filed by Wendelken demanding on open account the sum of $513.-90 for repairs to the engine. This suit was answered by Dibert admitting that Wendelken had performed repair work on the engine but alleging that the work was not performed in a workman-like manner, was defective and resulted in damages and expenses to Dibert.
Dibert then filed suit against Wendelken for the sum of $7,718.00 claiming that this amount was due for damages resulting from the first suit being filed, for rental of a replacement unit necessitated by the defective repairs performed on the engine and for expenses incurred in hauling the engine back and forth to the repair shop.
After trial of the consolidated cases, judgment was rendered by the trial court awarding Wendelken the sum of $513.90 with legal interest and costs and rejecting all of the demands of Dibert. We are not favored with written reasons for judgment by the trial court, but to grant judgment to Wendelken as prayed for, the trial court found that the repairs were made, that they were not defective, and that the subsequent breakdown of the engine was not the result of poor workmanship by the repair shop. Dibert has appealed from the adverse judgment.
The facts, although disputed in some details, are established by the record as follows : Dibert was the owner of a front end loader (sometimes referred to as a “bobcat”) powered by the four cylinder Wisconsin engine in question, and used to move sand at Dibert’s plant near Roseland, Louisiana. The sand was used by Dibert in connection with metal casting molds. In December, 1970, the engine which had been used by Dibert for more than a year began to give trouble. Wendelken was contacted since it is listed as an authorized service representative for Wisconsin engines. The engine was taken out of the front end loader and delivered to Wendelken’s shop, apparently in a disassembled condition.
Mr. Henry Wendelken, the owner of the machine shop, quoted a price of $513.90 for overhauling and rebuilding the engine. There is some dispute between the parties about whether Mr. Wendelken advised Mr. Grady Cutrer, the maintenance superintendent of Dibert, that he would recommend buying a new engine for $750.00, less a possible discount, instead of repairing or rebuilding the old engine. Mr. Cutrer does not recall such a recommendation, but, in any event, it was agreed that Wendelken would rebuild the engine and by the admission of Henry Wendelken himself, it was the understanding between the parties that after the rebuilding, the engine would be somewhat in the condition of a new engine. The work was completed, and the engine was returned to Dibert on January 13, 1971. On the following day the engine was started, and, according to Mr. Cutrer, difficulties developed and Wendelken was notified.
Wendelken sent two men to examine the engine; they found that the installation by Dibert was incorrect; and they changed certain wiring. All parties acknowledge *228 that this difficulty resulted from incorrect wiring by Dibert.
Next, the engine was returned to Wen-delken on January 18, 1971, because of a malfunction in the oil pump. A new oil pump was installed by Wendelken with no charge for the labor. The entire piece of equipment was returned to Dibert about January 22, 1971, but a noise developed in the engine and Wendelken was again notified. Wendelken’s employees examined the machine and determined that there was a defective clutch on the front end loader. Dibert apparently obtained a replacement or repair parts for the clutch after some' delay and then put the machine back into service. According to the witnesses for Dibert, the machine operated only eight or ten hours and again failed. Wendelken, of course, had no way of knowing how many hours of service the machine had given during the approximate period of one month it had been with Dibert.
After this final failure, Wendelken was called and the machine was returned to the Wendelken premises on or about February 22. The engine was examined by Henry Wendelken and by Louis Wainwright on February 23. Wainwright was at the time of the trial an independent mechanic who had previously been employed by Wendel-ken. Wainwright testified that the air cleaner was not tight in its housing, and that sand and dirt were bypassing the cleaner and going into the engine. Both Wainwright and Henry Wendelken testified that the engine had failed because it was improperly maintained by Dibert, stating that dirt and sand had gotten into the engine and ruined it.
At the time of trial the engine was being retained at Dibert’s plant. Henry Wendel-ken testified on behalf of his company that he was willing to let the New Orleans representative of Wisconsin engines inspect the engine and if they determined that the malfunction was the fault of Wendelken, he would give Dibert a new engine. This inspection has never taken place.
There is considerable testimony in the record concerning the old oil pump on the engine and the subsequent replacement. Also, there is considerable testimony about the air filter and the fact that on one occasion the Wendelken employees informed the Dibert people that the air cleaner was dirty and needed to be replaced in the near future. The air cleaner was of the heavy duty type, and there is no dispute among the parties that it was a maintenance item, the responsibility of Dibert.
The issues between Wendelken and Dibert involved principally questions of fact and not of law. The law is clear that a repairman is entitled to be paid for his work unless it is not carried out in a proper manner and is defective; the law is equally clear that the owner is not required to pay for defective repairs.
Counsel for Dibert cites the cases of Smith v. Slatten, 18 So.2d 860 (La.App. 2 Cir. 1944); Clark v. Canal Automatic Transmission Service, Inc., 216 So.2d 354 (La.App. 4 Cir. 1968), and McCann v. George, 238 So.2d 197 (La.App. 1 Cir. 1970), writ refused, 256 La. 883, 239 So.2d 541 (1970). These cases stand for the proposition that an owner is not required to pay for defective repairs; there is no question that this is a viable principle of law.
There are also cases which reflect the converse of the rule — that the owner must pay for the repairs unless he proves that the repairs are defective. See Johnson v. Benton Auto Works International, Inc., 228 So.2d 734 (La.App. 4 Cir. 1969).
Particularly pertinent to the case before us are the legal principles of appellate review as stated by our brother Pickett in McCann, supra, where he also quotes the Louisiana Supreme Court:
“Applicable here is the well established jurisprudence of this state that the findings of fact by the trial court are entitled to great weight on appeal. This principle is particularly true in this case where the credibility of at least some of *229 the witnesses is involved. In Orlando v. Polito, 228 La. 846, 84 So.2d 433, the Supreme Court said:
“ ‘It is well settled that the trial judge’s findings on question (sic) of fact, and particularly on questions involving the credibility of witnesses who testified before him, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous.’ ” 238 So.2d 197 at 199 and 200.
The issues of fact in the present case were resolved by the trial court to the effect that the repair work was not defective and that the failure of the engine was occasioned by improper maintenance. The trial judge had the opportunity to hear witnesses, to see them on the witness stand, and to evaluate their testimony. We cannot say that the conclusions reached by the trial judge are manifestly in error.
Therefore, the decision of the trial court is affirmed and costs of the appeal are taxed against appellant.
Affirmed.