SAVOIE, Judge.
Originally, Herbert G. Mears sued Midco Louisiana Company (Midco) for damages resulting in Midco’s delay in repairing Mears’ dozer. In response thereto, Midco *594 filed a separate suit against Mears, d/b/a Mears Sand & Gravel, on open account, representing the cost of the repairs made to the dozer.[1] These two suits were consolidated for trial.
With respect to the first suit, the trial court awarded Mears $2,000.00 in damages for Midco’s inordinately long delay in repairing the dozer. As to the latter suit, the trial court determined the cost of the overhaul to be $8,000.00 and awarded this sum to Midco.[2] In addition, the trial court awarded Midco attorney's fees in the amount of 25°/° of the principal and interest owed.
Both parties have appealed the award for the transmission repair work. In addition, Midco contends the trial court erred in awarding $2,000.00 for loss of business profits to Mears. Further, Mears assigns as error the trial court’s granting of attorney’s fees on the open account.
I. AWARDS FOR TRANSMISSION REPAIR WORK AND ATTORNEY FEES
At the outset of the trial, Mears stipulated that if the repairs were properly made, then Midco’s demand therefor met all procedural requirements under the open account statute.[3] Therefore, the only question before the trial court with respect to the suit on open account was whether the repairs were properly made.
The record reflects that in September, 1978, Mears’ dozer failed to operate in low gear, and the second and high gears were weak. Further, the dozer would not pull correctly and would overheat. With respect thereto, Robert Mears called Midco about repairing the dozer. He talked with Midco’s shop foreman, Jerry Harris, who advised rebuilding the transmission. The dozer was tendered to Midco for his repair work. The repair work was done and on November 16, Mears picked up the dozer. In mid-January, mechanical problems recurred. Midco was called and it discovered that the charging pump shaft was sheared off. Midco changed the pump at no cost to Mears. Later, in January, the dozer was losing low gear power and would not steer properly. Again, Midco came out and, this time, changed the steering valve.[4] Thereafter, the dozer became inoperable in low gear. Although Midco made several requests for Mears to return the dozer for further investigation of the problem, Mears refused to do so. Neither did Mears take the dozer to any other company for further repairs.
Mears contends that Midco’s repair work was defective and thus, Mears does not have to pay for such work. While it is true that the owner is not required to pay for defective repairs, Wendelken Machine Shop, Inc. v. Dibert, Bancroft & Ross Co., Ltd., 279 So.2d 226, 228 (La.App. 1st Cir. 1973), the burden is on the party alleging defective repairs to prove same by a preponderance of the evidence.
In this instance, the record is devoid of any proof that the recurrence of the low gear failure was caused by defective repairs by Midco. The record reflects only that the problem recurred. Thus, in the absence of any proof that the repair work *595 done by Midco was done in an improper manner and was defective, Midco is entitled to be paid for its work. See Wendelken Machine Shop, Inc., supra.
As previously noted, Mears stipulated the cost of the repair work, if properly done, was the $15,520.81 demanded by Mid-co. By such stipulation, any question as to the amount owed by Mears on the open account was removed from the purview of the trial court. Accordingly, the trial court erred in determining that $8,000.00 was the binding sum for the cost of the overhaul, which cost formed the basis of Midco’s open account suit.
Further, due to Mears’ stipulation that the procedural requirements of L.S. A.-R.S. 9:2781 were met, Mears is liable also for attorney fees. The trial court awarded 25% of the principal and interest owed and we find this award is proper.
II. AWARD OF $2,000.00 TO MEARS
Midco contends the trial court’s award of $2,000.00 for loss of business profits was based purely on speculation. It claims that Mears failed to prove that Midco was delinquent in repairing the dozer and, if it was, that Mears did not prove any business loss as a result thereof. We note that these claims by Midco contradict the trial court’s factual findings.
The trial court found that delay in repairing the dozer was inordinately long under the circumstances and, therefore, unreasonable. In reaching this conclusion, the trial court noted that while no fixed period was set for completion of the repairs, Mid-co was advised of the urgency for the work to be done. Further, the trial court believed that Harris, Midco’s shop foreman, made some assurance to Mears that the repairs would be completed within three to four weeks, excepting some delay for delivery of parts. No such parts delivery delay was found by the court.
Factual findings by the trial court based on its reasonable evaluations of credibility are entitled to great weight and should not be overturned on appeal absent manifest error. Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973), rehearing denied, Oct. 26, 1973.
In support of the trial court’s findings, we note that Harris testified that he estimated the repair time to be three to four weeks, which is the normal time frame for such work. According to Robert Mears, the dozer was delivered on September 6, 1978. Midco’s invoice indicates that work was not begun until the 22nd and, then, only on the 22nd and 23rd for the month of September. Work was not resumed thereon until October 4th. Although the invoice shows the last work was performed on October 31, Robert and Ray Mears testified the dozer was not released to them until November 16. Even assuming the dozer could have been picked up at the earlier date, Midco would have had the dozer for almost eight weeks. Although Harris mentioned at one point in his testimony that he had ordered parts for the dozer, he did not attribute any delay in repair to this fact.
Further, Robert Mears testified that he informed Midco as to the urgency of the repairs. Although Harris testified to the contrary, it can be inferred by the tremendous amount of overtime that was charged to this job that Midco was aware of this fact. Midco’s service department invoice shows that, beginning on September 23, the second day any work was performed on the dozer, out of a total of over 150 hours charged to the job, the regular hours and the overtime hours were approximately the same.
In light of the above, we find no error in the trial court’s findings and its conclusions that the delay time in repairing the dozer was unreasonable.
As to the issue of damages for delay, L.S.A.-C.C. art. 1930 and 2769 provide:
“1930. Liability for violation of contract “The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the *596 damages, which the other party has sustained by his default.”
“2769. Contractor’s liability for noncompliance with contract
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.”
Therefore, Mears is entitled to damages for Midco’s delay in repairing the dozer. With respect thereto, the trial court stated:
“Insofar as damages to be awarded for breach, Mears presented evidence, showing that production was drastically reduced during the month of October, as well as showing that there were additional labor costs associated with the move of the plant which would not have been incurred had the tractor been available. The testimony does reflect that in October, 1978, there was a drop in production of approximately 500 cubic yards of sand and gravel as compared with the previous year and approximately 6,000 yards below the month of August of the same year which had been a normal production month. Of course, it should be noted that there would have been some drop in production in any event should the repairs on the vehicle have been completed in the promised time. Neither Ray Mears or [nor] his fatehr [sic], Herbert Mears, were able to furnish the court with any estimate of profit earned by the company per cubic yard of production and sales. With regard to the additional labor costs, the figures supplied to the court show a slight increase in wages paid out during the month of October as compared with other comparable periods. While it is impossible to assess an exact amount of the loss experienced by Mears in loss of sales and increased labor costs, the court believes that a fair evaluation of the evidence demonstrates that there was a loss to Mears caused by the three additional weeks of delay in repairing the tractor. The court fixes the sum of $2,000.00 as damages due Mears for this delay.”
We find no error with this award.
We recognize, as did the trial court, that loss of profit is speculative in nature. Almerico v. Highlands Insurance Company, 388 So.2d 1176 (La.App. 4th Cir. 1980). Be that as it may, a great deal of discretion is afforded the trier of fact in making a determination for such an element of damages. Almerico, supra. Further, it is well recognized that where damage (including loss of profits) and liability are certain and quantum is uncertain, courts are nonetheless required to award damages. Folds v. Red Arrow Towbar Sales Company, 378 So.2d 1054 (La. App.2nd Cir.1979).
For the foregoing reasons, the judgment of the trial court is amended in favor of Midco and against Herbert G. Mears, d/b/a Mears Sand & Gravel, to increase the sum to $15,521.81. In all other respects, the judgment of the trial court is affirmed. Costs for this appeal are to be borne equally by the parties.
AMENDED IN PART AND, AS AMENDED, AFFIRMED.

. Midco sued Mears for $15,520.81. $998.70 of this bill was for repairs not related to the transmission and, at trial, admittedly owed by Mears. Therefore, $14,522.11 is the cost of the transmission repair that is in dispute on this appeal.

. The trial court awarded Midco a total of $8,998.70. Of this amount, $8,000.00 was for the transmission repair work. The other $998.70 was for unrelated repairs, which amount is not in dispute on appeal.

. L.S.A.-R.S. 9:2781 provides, in pertinent part:
“A. When any person fails to pay an open account within thirty days after receipt of written demand therefor correctly setting forth the amount owed and a copy of the invoices in support thereof, that person shall be liable for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in -favor of the claimant....

.The steering valve replacement cost of $998.70 was charged to Mears. The parties admit this problem was not related to the transmission work and that Mears is responsible for this amount. See footnotes 1 and 2.